FILED
Sep 18, 2017
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUTTERGLOVE, INC., <br><br>    Plaintiff, <br><br> v. <br><br> AMERICAN DIE and ROLLFORMING, INC., et al., <br><br>    Defendants. | Case No. 2:16-cv-02408-WHO <br><br> **CLAIM CONSTRUCTION ORDER** |

## BACKGROUND

Plaintiff Gutterglove, Inc. asserts 19 claims from two asserted patents: U.S. Patent Nos. 9,021,747 (the '747 patent) and 8,479,454 (the '454 patent). Both of the asserted patents relate generally to the field of rain gutter debris preclusion systems, referred to as gutter guards. '454 patent at 1:14–16 (Song Decl. ¶ 2, *id*. Ex. 1, Dkt. No. 28-2); '747 patent at 1:13–15 (Song Decl. ¶3. *id*. Ex. 2, Dkt. No. 28-3). Defendants American Die and Rollforming, Inc. ("ADR") and Artesian Home Products, Inc. dba Valor Gutter Guard ("Artesian")(collectively, "defendants") sell a product named the Valor Gutter Guard, which is the primary accused product here.

Exemplary claim 1 from the '454 patent provides,

> A gutter debris preclusion system comprising:
>
> a substantially rigid support having an elongate form between a pair of lateral ends opposite each other;
> a screen having a fenestrated configuration to allow water to pass therethrough while precluding the passage of debris sized larger than fenestrations in the screen;
> said screen coupled to said rigid support and positioned overlying said support;
> said screen extending along a length of said rigid support between said pair of lateral ends, wherein said rigid support is wider than said screen in a direction perpendicular to a length of said rigid

support between said lateral ends, said screen coupled to said rigid support with an upper portion of said rigid support on one side of said screen including an extension overlapping on an upper edge of said screen;

said screen in contact with said support at a plurality of locations beneath said screen;

said rigid support includes a floor on a portion of said rigid support located beneath said screen, said floor spaced from said screen, said floor including plurality of holes therein, said floor including ribs extending up from said floor, said ribs in contact with said screen;

said ribs, are elongate in form and being oriented substantially parallel with each other and extending between said lateral ends of said rigid support; and,

said screen being bent into a configuration including multiple crests alternating with multiple troughs, with said troughs closer to said rigid support than said crests and with at least some of said troughs in contact with said rigid support, wherein said troughs extend substantially perpendicular to said ribs;

wherein said extension defines an upper portion of a slot, said upper edge of the said screen located within said slot and with both portions of said crests of said screen and portions of said troughs of said screen received within said slot.

'454 patent at 8:62–9:31.

And claim 1 from the '747 patent provides,

A leaf preclusion system for a roof gutter having a gutter lip for keeping leaves and other debris out of the roof gutter while allowing water to pass thereinto, comprising: a sheet of fine mesh material; said sheet of fine mesh material having an upper edge adapted to be located above a lower edge and with said sheet of fine mesh material overlying the roof gutter; said sheet of fine mesh material being corrugated with ridges extending at least part of the way from said upper edge to said lower edge and wherein said lower edge being adjacent the gutter lip when the system is in use, wherein the water is allowed to pass through said sheet of fine mesh material into the roof gutter,

wherein at least one of said ridges extends from at least one of said upper edge and said lower edge.

'747 patent at 7:62–8:8.

The parties identified four most significant terms in the '454 patent, and three most significant terms in the '747 patent. I held a Claim Construction hearing on September 1, 2017.

## LEGAL STANDARD

Claim construction is a matter of law. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). Terms contained in claims are "generally given their ordinary and customary meaning." *Vitronics*, 90 F.3d at 1582. In determining the proper construction of a claim, a court begins with the

2

intrinsic evidence of record, consisting of the claim language, the patent specification, and, if in evidence, the prosecution history. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005); *see also Vitronics*, 90 F.3d at 1582. "A claim term used in multiple claims should be construed consistently . . . ." *Inverness Med. Switzerland GmbH v. Princeton Biomeditech Corp.*, 309 F.3d 1365, 1371 (Fed. Cir. 2002).

"The appropriate starting point . . . is always with the language of the asserted claim itself." *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998). "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips*, 415 F.3d at 1312. "There are only two exceptions to this general rule: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012).

"Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313. "Claims speak to those skilled in the art," but "[w]hen the meaning of words in a claim is in dispute, the specification and prosecution history can provide relevant information about the scope and meaning of the claim." *Electro Med. Sys., S.A. v. Cooper Life Scis., Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994) (citations omitted). "[T]he specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Vitronics*, 90 F.3d at 1582. "However, claims are not to be interpreted by adding limitations appearing only in the specification." *Id.* "Thus, although the specifications may well indicate that certain embodiments are preferred, particular embodiments appearing in a specification will not be read into the claims when the claim language is broader than such embodiments." *Id.* Conversely, "where [ ] the claim language is unambiguous, [the Federal Circuit has] construed the claims to exclude all disclosed embodiments." *Lucent Techs., Inc. v. Gateway, Inc.*, 525 F.3d 1200, 1215-16 (Fed. Cir. 2008). "[T]he description may act as a sort of dictionary, which explains the

3

invention and may define terms used in the claims," and the "patentee is free to be his own lexicographer," but "any special definition given to a word must be clearly defined in the specification." *Markman*, 517 U.S. at 989-90.

On the other hand, it is a fundamental rule that "claims must be construed so as to be consistent with the specification." *Phillips*, 415 F.3d at 1316. "The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998).

Finally, the court may consider the prosecution history of the patent, if in evidence. *Markman*, 52 F.3d at 980. The prosecution history may "inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Phillips*, 415 F.3d at 1317 (citing *Vitronics*, 90 F.3d at 1582-83); *see also Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1384 (Fed. Cir. 2005) ("The purpose of consulting the prosecution history in construing a claim is to exclude any interpretation that was disclaimed during prosecution.") (internal quotations omitted).

In most situations, analysis of this intrinsic evidence alone will resolve claim construction disputes. *Vitronics*, 90 F.3d at 1583. However, "it is entirely appropriate . . . for a court to consult trustworthy extrinsic evidence to ensure that the claim construction it is tending to from the patent file is not inconsistent with clearly expressed, plainly apposite, and widely held understandings in the pertinent technical field." *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1309 (Fed. Cir. 1999). Extrinsic evidence "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980. All extrinsic evidence should be evaluated in light of the intrinsic evidence, *Phillips*, 415 F.3d at 1319, and courts should not rely on extrinsic evidence in claim construction to contradict the meaning of claims discernible from examination of the claims, the written description, and the prosecution history, *Pitney Bowes*, 182 F.3d at 1308 (citing *Vitronics*, 90 F.3d at 1583). While extrinsic evidence may guide the meaning of a claim term, such evidence

4

is less reliable than intrinsic evidence. *Phillips*, 415 F.3d at 1318-19.

**DISCUSSION**

Gutterglove urges that the "plain and ordinary meaning" applies for five out of seven of the disputed terms and asks the court not to construe them. *See* Gutterglove's Opening Claim Construction Br. at 6 ("a floor"), 9 ("a floor on a portion of said rigid support"), 14 ("plurality of holes"), 19 ("being corrugated with ridges"), 23 ("ridges")("Op. Br.")(Dkt. No. 28). But in reaching the conclusion that no construction is necessary, it ignores the rule that the court must resolve actual disputes regarding the proper *scope* of claims, even when terms have "well-understood definition[s]." *See O2 Micro*, 521 F.3d at 1360–61. When the parties present such a dispute, I must determine the scope as a matter of law.

**I.    THE '454 PATENT MOST SIGNIFICANT CLAIM TERMS**

**A.    "a floor" (claims 1, 7, 12, 16)**

| GUTTERGLOVE'S PROPOSED CONSTRUCTION | DEFENDANTS' PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|
| Plain and ordinary meaning.<br><br>Alternatively, "a structure that resides slightly below the screen to provide a space in which water can travel after coming into contact with the screen" | "a planar supporting surface of the underlying support spanning between the front edge and the tab and between the lateral ends of the rigid support" | "a surface of the underlying support that resides slightly below the screen" |

To provide context to the claim term, the portion of claim 1 that mentions "a floor" provides,

>said rigid support includes *a floor* on a portion of said rigid support located beneath said screen, said floor spaced from said screen, said floor including plurality of holes therein, said floor including ribs extending up from said floor, said ribs in contact with said screen;

'454 patent at 9:13–17 (emphasis added to claim term).

Both parties agree that this term is case dispositive. Joint Claim Construction St. at 6 (Dkt. No. 26). Defendants insist that this term must be construed because a dispute exists as to the scope of the term. They argue that (1) "the floor is a part of a rigid support structure" and

"therefore the floor itself must be rigid";[1] (2) the floor must be planar; and (3) the floor must occupy a defined area. They reject plaintiff's alternate proposed construction because it "would expand the meaning of 'a floor' to include any 'structure' that 'resides slightly below the screen to provide a space in which water can travel… .'" Defs.' Responsive Claim Construction Br. at 13–14 ("Resp. Br.")(Dkt. No. 32). They urge that "the intrinsic record shows that a much narrower structure was intended[,]" mainly that the floor is a "level" "surface" that "provides support," and it is limited to a location "between the front edge and the tab and between the lateral ends of the rigid support." *Id*. at 14, 16–17.

Because a dispute exists as to the scope of the term "floor," I will look to the intrinsic record to properly construe the term. *See Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998)("[W]here there are several common meanings for a claim term, the patent disclosure serves to point away from the improper meanings and toward the proper meaning.").

### 1. The floor need not be "planar"

#### a. Specification and Preferred Embodiments

Defendants insist that the specification "makes numerous references to the floor being planar" and every preferred embodiment discloses a planar floor. Resp. Br. at 14–15. The specification refers to figures 1-4 and provides,

> [t]he floor **50** resides slightly below the mesh **20** to provide a space in which water can travel after coming into contact with the mesh **20**, and typically passing through the mesh **20** but still adhering for some time to an underside of the mesh **20**. This floor **50** includes transitions **52** at upper and lower edges thereof which are preferably diagonal and position the floor **50** beneath the slots **32, 34** and beneath a plane in which the tab **40** and front edge **60** reside.

'454 patent at 7:36–43.

Defendants point to two places in the specification that use the word "planar." Resp. Br. at

---

[1] In its Reply, Gutterglove notes that defendants argue that the floor must be "rigid[,]" but their proposed construction does not include that limitation. *See* Resp. Br. at 14 ("[The claims] state that the floor is part of a 'rigid support' and therefore the floor itself must be rigid… ."). Since their proposed construction does not import a "rigid" limitation, I will not address that apparent dispute.

6

15 (citing '454 patent at 2:1–6; *id*. at 7:30–33). The first refers to "ribs extending up from the floor … to a line parallel with planes of the lip and tab to support the mesh in a generally planar configuration parallel with the tap and lip." '454 patent at 2:1–6. The second notes that "[t]he tab **40** is substantially planar and aligned in a common plane with the extension on the upper surface of the upper slot **32**" and "the entire support **30** has a generally planar form… . The floor **50** is provided in a lower plane parallel with the plane in which the tab **40** and front edge **60** are located." '454 patent at 7:26–33.

Gutterglove argues that defendants' citations to "planar" in the specification amount to an "inaccurate[] and improper[]" attempt to "equate the claim term 'a floor' with the 'rigid support' element of the claims… ." Reply at 9. It cannot seriously dispute that the specification generally describes a floor that is parallel to a planar tab, and that the entire support has a generally planar form. Every embodiment depicts the floor as planar. None of those things, however, change the fact that the claim language does not *require* the floor to be planar. "Absent a clear disavowal in the specification or the prosecution history, the patentee is entitled to the full scope of its claim language." *Home Diagnostics, Inc. v. LifeScan, Inc.,* 381 F.3d 1352, 1358 (Fed. Cir. 2004). Defendants cannot point to a location in the specification where Gutterglove specifically disavows non-planar floors.

It is "not enough that the only embodiments, or all of the embodiments, contain a particular limitation." *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1366 (Fed. Cir. 2012). It is a well-established principle that courts "do not read limitations from the specification into claims[.]" *Id.*; *see also Loctite Corp. v. Ultraseal Ltd.,* 781 F.2d 861, 867 (Fed. Cir. 1985)("Generally, particular limitations or embodiments appearing in the specification will not be read into the claims."). Defendants' citation to *Modine Manufacturing Co. v. United States International Trade Commission* does not alter this conclusion because this is not an instance where accepting *or rejecting* a proposed limitation amounts to "a claim interpretation that would exclude the inventor's device[.]" 75 F.3d 1545, 1550 (Fed. Cir. 1996); *see* Resp. Br. at 14–15.

        **b.**    **Prosecution History**

Defendants proffer two additional arguments that may be relevant for validity, but do not

warrant a different conclusion on claim construction. First, they argue that "[t]he '454 patent did not advance floor structures on gutter guards beyond that already seen in the prior art and therefore, the construction of 'a floor' should consummately be limited in scope." Resp. Br. at 15. Second, they cite to the prosecution history, specifically a terminal disclaimer filed by Lenney, purportedly in response to the PTO's determination that the claim scope of the '454 patent was not "patentably distinct" from the '912 patent, claim 1, which required the floor to be planar. *See* Terminal Disclaimer (Costello Decl. ¶ 10, Ex. 7, Prosecution History at GG000101-GG000103, Dkt. No. 32-8 at 5); Remarks from PTO (Costello Decl. ¶ 10, Ex. 7, Prosecution History at GG000135, Dkt. No. 32-8 at 11); '912 patent, claim 1 at 8:7 ("wherein said floor is planar")(Costello Decl. ¶13, Ex. 10, Dkt. No. 32-11 at 9).

The PTO memo states, "Although the conflicting claims are not identical, they are not patentably distinct from each other because the scope of claims 1-20 [of the '454 patent] are encompassed by the scope of claim 1 of patent 7310912." Remarks from PTO ¶ 6. Because the '912 patent claimed a "planar" floor, the only way for the claims of the '454 patent to be "encompassed by" the '912 patent is if the floor of the '454 patent is planar as well. But this is a provisional finding by the PTO, not a specific disclaimer by the patentee. "[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Phillips*, 415 F.3d at 1317. Defendants cannot point to a specific point during prosecution when Lenney disclosed his understanding of the '454 patent to encompass only planar floors. *See Chimie,* 402 F.3d at 1384 ("The purpose of consulting the prosecution history in construing a claim is to exclude any interpretation that was disclaimed during prosecution.")(internal quotation marks omitted).

"[B]ecause the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Phillips*, 415 F.3d at 1317. Defendants' arguments may be relevant to a determination of the '454 patent's validity, but they do not justify importing the "planar" limitation during claim construction.

8

### 2. The floor is a portion of the underlying support but need not be construed as "spanning" a specified area

Defendants again point to the Lenney '912 patent and the specification to argue that the floor is limited to a defined area. Resp. Br. at 16; *see* '454 patent, Abstract ("A floor is located between the front edge and tab at a position slightly below a plane in which the tab and front edge are located."). Gutterglove counters that nothing in the claims mandates that the floor "span" a defined area, and the terms "front edge" and "tab" should not be read into the independent claims. See Op. Br. at 8. While the specification certainly supports defendants' proposed construction, nothing in the claims *requires* the floor to span the area identified in the Abstract, so I will not import that limitation into the claim term "a floor."

### B. "a floor on a portion of said rigid support" (claim 1)

| GUTTERGLOVE'S PROPOSED CONSTRUCTION | DEFENDANTS' PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|
| Plain and ordinary meaning (i.e., "a lower portion of the rigid support"). | "the floor (defined above) as a portion of the rigid support, the other portions of the rigid support being a tab portion and a front edge portion, the floor portion, the tab portion, and the front edge portion combining to comprise the rigid support." | "a lower portion of the rigid support" |

Gutterglove asserts that "[t]he plain and ordinary meaning of 'a floor on a portion of said rigid support' in the context of the '454 patent requires that the term be construed as a lower portion of the rigid support within the meaning of claim 1." Op. Br. at 10. And it argues that defendants' proposed construction seeks to improperly import limitations from the specification into the claims. In response, defendants note that Gutterglove's proffered explanation of "plain and ordinary meaning" is "at least a start[,]" but they urge that the definition must also incorporate the definition of "floor," as well as provide the other components that comprise the rigid support. Resp. Br. at 18.

Defendants misunderstand certain tenets of claim construction. They argue that the scope

9

of this term should be limited by the prior art, but provide no support for such a mandate. I already rejected this theory in the discussion of the previous term. And they cite to the rule that a claim interpretation is "rarely, if ever, correct" if it excludes a preferred embodiment, *Vitronics*, 90 F.3d at 1583, to argue that their interpretation must be correct because "no embodiment is excluded by [their] construction." Resp. Br. at 20. But their conclusion does not follow the premise. Their interpretation could be incorrect (or inappropriate) even though it does not exclude any embodiments.

The parties have not convinced me that an actual dispute exists here. But to clarify the plain and ordinary meaning, I will accept Gutterglove's proposed construction.

### C. "screen" (claims 1, 2, 12, 13, 16, 17)

| GUTTERGLOVE'S PROPOSED CONSTRUCTION | DEFENDANTS' PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|
| "Mesh with openings small enough to preclude grit and other fine debris from passing into the gutter, but that allow water to pass into the gutter" | "a mesh filtration screen formed into corrugations with crests and troughs perpendicular to the longest dimension of the mesh where the crests and troughs extend from an upper edge of the mesh to a lower edge." | "mesh formed into corrugations with crests and troughs with openings small enough to preclude grit and other fine debris from passing into the gutter, but that allows water to pass into the gutter." |

A portion of exemplary claim 1 provides,
> *a screen* having a fenestrated configuration to allow water to pass therethrough while precluding the passage of debris sized larger than fenestrations in the screen;
> …
> said screen being bent into a configuration including multiple crests alternating with multiple troughs, with said troughs closer to said rigid support than said crests and with at least some of said troughs in contact with said rigid support, wherein said troughs extend substantially perpendicular to said ribs;

'454 patent at 8:65–68 (emphasis added to claim term); *id*. at 9:21–26.

Gutterglove identified this term as case dispositive for this patent. Joint Claim Construction St. at 6. It contends that defendants violate claim construction principles by "removing claim language and importing limitations from the specification into the claims." Op. Br. at 11 (citing *Innova/Pure Water, Inc.*, 381 F.3d 1117). It argues that defendants' proposal actually seeks to construe a different claim term ("a configuration including multiple crests

10

alternating with multiple troughs"), and "the *shape* of the screen is independent from the function of the screen itself." Op. Br. at 12. It insists that this term must be construed to communicate the function of the screen, but not its shape/configuration. *See id*. Defendants point to the specification and the file history to argue that the screen must be limited to one "bent into a configuration of crests and troughs." Resp. Br. at 21.

### 1. The term should be construed to communicate the size of the screen's openings

Defendants do not touch this argument in their response, so it is unclear if a dispute actually exists. The specification provides, "[t]he screen **20** is fenestrated with sufficiently fine openings that debris is substantially entirely precluded from passing through the mesh **20**." '454 patent at 3:36–39. To avoid a potential dispute down the road, I will include Gutterglove's proposed language in construing this term.

### 2. The screen is limited to one with crests and troughs

Each of the independent claims requires that the screen be "bent into a configuration including multiple crests alternating with multiple troughs." '454 patent at 9:21–22 (claim 1); *id*. at 10:9–10 (claim 12); *id*. at 10:53–54 (claim 16). In addition, defendants again point to the prosecution history and the fact that "every embodiment of the screen in the '454 patent is shown as having crests and troughs[.]" Resp. Br. at 21. I have previously rejected both of those arguments as dictating the construction of a claim, but in this case, the prosecution history provides more compelling support. The file notes specifically state, "prior art does not provide sufficient motivations to modify the screen being bent into a configuration including multiple crests alternating with multiple troughs… ." Notice of Allowability ¶ 3 (Costello Decl. ¶ 10, Ex. 7, Prosecution History at GG000074-GG000075, Dkt. No. 32-8 at 3). The examiner concluded that "[t]he prior art shows different screen support designs." *Id*. Unlike the previous citations to the prosecution history, this one provides clear support for defendants' position.

But I need not even consider the prior art and the prosecution history here because "[i]t is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips*, 415 F.3d at 1312. The claims clearly define the

11

screen as "being bent into a configuration including multiple crests alternating with multiple troughs[.]" I do not see the reasoning behind Gutterglove's attempts to distinguish the *function* of the screen from the *configuration* of the screen, when both are clearly dictated by the claim language. To conclude that the configuration was somehow not dictated by the claim language would be error. *See Process Control Corp. v. HydReclaim Corp.*, 190 F.3d 1350, 1357 (Fed. Cir. 1999)("The district court's attempt to use the written description to circumvent the plain language of the claim and the clear definition of the disputed claim language found therein was inappropriate.").

But because the independent claims do not require *all of* the crests and troughs to be "perpendicular to the longest dimension of the mesh" or "extend from an upper edge of the mesh to a lower edge,"[2] I will not import those limitations from the specification. *See Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1305 (Fed. Cir. 2011)("There is a fine line between construing the claims in light of the specification and improperly importing a limitation from the specification into the claims.").

### D. "plurality of holes" (claims 1, 12, 16)

| GUTTERGLOVE'S PROPOSED CONSTRUCTION | DEFENDANTS' PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|
| Plain and ordinary meaning<br><br>In its brief, "plurality is more than one." | "more than two openings penetrating the floor which allow water to be conducted through the floor." | "two or more openings penetrating the floor which allow water to be conducted through the floor." |

Claim 1 provides in part,
> said rigid support includes a floor on a portion of said rigid support located beneath said screen, said floor spaced from said screen, said floor including plurality of holes therein, said floor including ribs extending up from said floor, said ribs in contact with said screen;

'454 patent at 9:13–17.

Gutterglove insists that the ordinary meaning of "plurality" is "more than one," which is

---

[2] *See* '454 patent, claim 1 at 9:25 – 26 ("wherein said troughs extend *substantially* perpendicular to said ribs")(emphasis added); claim 12 at 10:3–29 (no mention of perpendicular); claim 16 at 10:47–11:17 (same).

12

the same as "two or more," but need not be "more than two," as defendants' proposed construction suggests. Op. Br. at 14. In response, defendants state that they "have no dispute with Plaintiff's definition of the word 'plurality' as properly being 'two or more.'" Resp. Br. at 22. It then once again argues that the '454 patent provided no advance over the '912 patent, so the holes must penetrate the floor. *Id*. at 23–24. I agree with Gutterglove that defendants' prior art argument goes to validity, but I disagree with its conclusion that the rest of defendants' proposed construction is improper. Defendants agree to construe "plurality" as "two or more" and the requirement that the holes "penetrate the floor" is warranted when viewing the claims in light of the specification. *E.g.*, '454 patent at 2:2–3 ("This recessed area includes a floor with ribs extending up from the floor and with holes passing through the floor."); *see Markman*, 52 F.3d at 979 (the claims "*must be* read in view of the specification[,]" emphasis added).

## II. THE '747 PATENT MOST SIGNIFICANT CLAIM TERMS

### A. "fine mesh material" (claims 1–6, 11–13, 16–20, 21)

| GUTTERGLOVE'S PROPOSED CONSTRUCTION | DEFENDANTS' PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|
| "mesh with openings small enough to preclude grit and other fine debris from passing into the gutter, but that allow water to pass into the gutter" | "a mesh filter member which filters out debris while allowing water to pass therethrough and is imbued with properties of sufficient stiffness and ability to overcome water droplet adhesion characteristics without requiring an underlying support" | "a mesh filter member with openings small enough to filter out fine debris while allowing water to pass therethrough and is imbued with properties of sufficient stiffness and ability to overcome water droplet adhesion characteristics without requiring an underlying support" |

For context, claim 1 recites in part:

> a sheet of *fine mesh material*; said sheet of *fine mesh material* having an upper edge adapted to be located above a lower edge and with said sheet of fine mesh material overlying the roof gutter; said sheet of *fine mesh material* being corrugated with ridges extending at least part of the way from said upper edge to said lower edge and wherein said lower edge being adjacent the gutter lip when the system is in use… .

'747 patent at 7:64–8:4 (emphasis added to claim term).

Gutterglove contends that defendants' proposal is improper because it (1) reads "fine" out

13

of the claim, (2) imports five limitations from the specification into the claim term,[3] and (3) "erroneously assumes" that the patentee acted as his own lexicographer. Op. Br. at 18. But Gutterglove takes the doctrine of "plain and ordinary meaning" too far. "It is a well-recognized principle of claim construction that the inventor's lexicography will govern when the specification reveals a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess." *Phillips*, 415 F.3d at 1316 (internal quotation marks and alterations omitted).

It is clear from the specification that the inventor intended specific attributes to apply to the '747 patent's "fine mesh material." *See* '747, Abstract ("The corrugations add strength to the material and collect water at troughs thereof where the collected water more readily forms droplets that fall down into the gutter."); *id*. at 1:40–42 ("The phenomenon of water tension and molecular cohesion tend to cause water to not want to pass through such mesh layers, but rather to cling to the mesh."); *id*. at 1:62–67 ("With this invention such a leaf preclusion system is provided with a simple single part construction which can still effectively filter leaves and other debris out while allowing water to pass into the gutter and have the structural support needed to maintain its position overlying the gutter."); *id*. at 2:3–20 ("With this invention, a leaf preclusion system is provided for a gutter which includes a filter layer … which filters out debris … while allowing water to pass therethrough. Uniquely, no underlying support is required beneath the filter member. The filter member is itself imbued with properties of sufficient stiffness and the ability to overcome water droplet adhesion characteristics without requiring an underlying support. Strength is provided to the filter member by providing a corrugated form … . Such a cross-section for the mesh causes the mesh to have greater strength particularly in resisting bending. … [T]hese corrugations greatly resist flexing… ."); *id*. at 4:43–46 ("Important characteristics of the material forming the mesh include sufficiently high strength and inelasticity to function structurally, as well as resistance to corrosion… .").

---

[3] Gutterglove breaks down defendants' proposed construction as requiring the following limitations: (1) imbued with properties, (2) of sufficient stiffness, (3) and ability, (4) to overcome water droplet adhesion characteristics, (5) without requiring an underlying support. Op. Br. at 18.

14

Defendants' proposed construction does not import limitations into the claim; rather, it properly views the claim term in light of the specification. *See Phillips*, 415 F.3d at 1316 ("[T]he specification necessarily informs the proper construction of the claims."); *Retractable Techs*., 653 F.3d at 1305 ("In reviewing the intrinsic record to construe the claims, we strive to capture the scope of the actual invention, rather than strictly limit the scope of claims to disclosed embodiments or allow the claim language to become divorced from what the specification conveys is the invention."). While the claim language itself does not require the "fine mesh material" to have specific attributes, the "specifications tell us otherwise." *Retractable Techs.*, 653 F.3d at 1305; *see id*. (concluding that the term "body" was limited to a single structure, even though the claims did not require it, because the specification expressly recited that "the invention" had a single-structure body, explicitly distinguished prior art, and only disclosed embodiments of a single-piece body).

**B.     "being corrugated with ridges" (claims 1, 16)**

| GUTTERGLOVE'S PROPOSED CONSTRUCTION | DEFENDANTS' PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|
| Plain and ordinary meaning.<br><br>Alternatively, "shaped into alternate ridges and grooves." | "Being shaped into a repeating pattern of parallel ridges and valleys extending perpendicular to a long axis of a gutter along their entire length so as to imbue the mesh material with properties of sufficient stiffness and ability to overcome water droplet adhesion characteristics without requiring an underlying support." | "shaped into a series of parallel ridges and grooves so as to give strength, extending generally perpendicular to a long axis of a gutter" |

Gutterglove contends that defendants' proposed construction should be rejected because it (1) imports limitations from the specification, (2) assumes that the inventors acted as their own lexicographers, (3) will confuse rather than clarify the claims, and (4) violates the principle of claim differentiation. Op. Br. at 21–22. Defendants counter that the construction must include a description of "corrugations," and a POSITA understands corrugations as providing strength to structures. Resp. Br. at 25. They highlight portions of the specification indicating that the

15

advancement offered by the '747 patent is the one-piece gutter guard system, and the "corrugated form" of the mesh imbues it with sufficient strength without the need of an underlying structural support. *Id*. at 26. They also contend that "corrugations" *must* consist of parallel ridges and valleys, and for the '747 patent, these parallel ridges and valleys run perpendicular with the long axis of the gutter. *Id*. And finally, the corrugated mesh screen must be engineered in such a way as to overcome problems with water adhesion. *Id*. at 28–29.

Gutterglove argues that "import[ing] language verbatim/near verbatim from the specification … is expressly prohibited when engaging in claim construction." Op. Br. at 21. But it misapprehends the claim construction process, and its cases do not warrant a different conclusion. The Federal Circuit has advised, "while claims are to be construed in light of the specification, they are not *necessarily* limited by the specification." *Enercon GmbH v. Int'l Trade Comm'n*, 151 F.3d 1376, 1384 (Fed. Cir. 1998)(emphasis added). It went on to find that a more specific definition of a disputed term only appeared in the preferred embodiment, but the remainder of the specification used more general terms interchangeably. *Id*. at 1384–85. It therefore concluded that the disputed term should be given its ordinary meaning. *Id*. at 1385.

The same is not true here. As discussed above in construing the term "fine mesh material," the specification repeatedly emphasizes the special characteristics imbued in the mesh. *See supra* section II.A. Those characteristics are effectively communicated in construing "fine mesh material" and need not be repeated here. However, as defendants point out, Gutterglove's proposed construction fails to convey any meaning of "corrugated." "While not an absolute rule, all claim terms are presumed to have meaning in a claim." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1119 (Fed. Cir. 2004). I have no doubt that "corrugated" must mean something more than "shaped into alternate ridges and grooves." The specification supports defendants' argument that corrugations run parallel and imbue the material with some additional strength. I find it difficult to believe that Gutterglove could argue that a plain and ordinary meaning of corrugated as understood by a POSITA would not include these

features.[4]

But the additional limitation that the corrugated ridges "extend perpendicular to the long axis of a gutter" requires further consideration. The specification clearly provides that "***this invention*** … includes a filter layer… . Strength is provided to the filter member by providing a corrugated form. … These corrugations extend perpendicular to a long axis of the gutter and parallel with a direction that water is migrating off of the roof." '747 patent at 2:3–18 (emphasis added). Because the limitation refers to *the invention* and not just a preferred embodiment, the specification mandates that the corrugated ridges must run parallel, and must extend perpendicular. *E.g., Microsoft Corp. v. Multi–Tech Sys., Inc.,* 357 F.3d 1340, 1351–52 (Fed. Cir. 2004) (construing claim to require feature that was "central to the functioning of the claimed invention"); *Alloc, Inc. v. Int'l Trade Comm'n,* 342 F.3d 1361, 1369–70 (Fed. Cir. 2003) (construing claim to include limitation because "very character of the invention" required that the limitation be part of every embodiment); *Toro Co. v. White Consol. Indus.,* 199 F.3d 1295, 1300–01 (Fed. Cir. 1999) (construing claim to require a particular configuration where specification described the importance of the configuration and did not disclose others).

But Gutterglove insists that this construction is improper because it would render dependent claim 2 superfluous. *See* Reply at 13. It argues that the doctrine of claim differentiation directs that the corrugations in independent claim 1 need not be perpendicular because dependent claim 2 imports that limitation. *Id.*; '747 patent, claim 2 at 8:9–12 ("The system of claim 1 wherein said ridges of said sheet of fine mesh material extend substantially perpendicular to said upper edge of said sheet of fine mesh material.").

It is true that "the doctrine is at its strongest where the limitation sought to be 'read into' an independent claim already appears in a dependent claim[.]" *Seachange Int'l, Inc. v. C-COR, Inc.,* 413 F.3d 1361, 1368–69 (Fed. Cir. 2005)(quotation marks and citation omitted).

> However, the doctrine only creates a presumption that each claim in a patent has a different scope; it is not a hard and fast rule of construction. The doctrine of claim differentiation can not broaden claims beyond their correct scope, determined in light of the

---

[4] During the hearing, Gutterglove conceded that the corrugations provide strength.

17

> specification and the prosecution history and any relevant extrinsic evidence.... Claims that are written in different words may ultimately cover substantially the same subject matter.

*Id*. at 1369 (quotation marks, alterations, and citation omitted).

Because the specification indicates that "***this invention's***" corrugations extend perpendicular to the long axis of the gutter, the presumption in favor of claim differentiation is overcome. *See Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998)("Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim. The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.")(citation omitted).

### C. "ridges" (claims 1, 2, 5, 6, 12, 16, 17, and 21)

| GUTTERGLOVE'S PROPOSED CONSTRUCTION | DEFENDANTS' PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|
| Plain and ordinary meaning. Alternatively, "raised bands or crests." | "a repeating pattern of parallel crests, which extend perpendicular to a long axis of a gutter along their entire length." | "raised bands or crests" |

Defendants insist that "ridges" must be construed in addition to "being corrugated with ridges" because the claims use the term "ridges" after first introducing the term in the context of "being corrugated with ridges" and the latter provides necessary context to the former. Resp. Br.at 32. I disagree with defendants. Their arguments are better suited for infringement. To the extent a dispute exists as to the scope of "ridges," I will adopt Gutterglove's proposed construction.

18

## CONCLUSION

In sum, the terms are construed as follows:

| '454 PATENT | |
|---|---|
| "a floor" (claims 1, 7, 12, 16) | "a surface of the underlying support that resides slightly below the screen" |
| "a floor on a portion of said rigid support" (claim 1) | "a lower portion of the rigid support" |
| "screen" (claims 1, 2, 12, 13, 16, 17) | "mesh formed into corrugations with crests and troughs with openings small enough to preclude grit and other fine debris from passing into the gutter, but that allows water to pass into the gutter." |
| "plurality of holes" (claims 1, 12, 16) | "two or more openings penetrating the floor which allow water to be conducted through the floor." |
| **'747 PATENT** | |
| "fine mesh material" (claims 1–6, 11–13, 16–20, 21) | "a mesh filter member with openings small enough to filter out fine debris while allowing water to pass therethrough and is imbued with properties of sufficient stiffness and ability to overcome water droplet adhesion characteristics without requiring an underlying support" |
| "being corrugated with ridges" (claims 1, 16) | "shaped into a series of parallel ridges and grooves so as to give strength, extending generally perpendicular to a long axis of a gutter" |
| "ridges" (claims 1, 2, 5, 6, 12, 16, 17, and 21) | "raised bands or crests" |

**IT IS SO ORDERED.**

Dated: September 18, 2017

William H. Orrick
United States District Judge